Bergstrom v. UNH                    CV-95-267-JD  01/09/96 P

UNITED STATES DISTRICT COURT FOR THE
                        DISTRICT OF NEW HAMPSHIRE


Carol Ann Bergstrom

        v.                              Civil No. 95-267-JD

University of N.H., et al.


                               O R D E R


     The plaintiff, Carol Ann Bergstrom, has filed this

employment discrimination action against her former employers,

defendants University of New Hampshire and the University System

of New Hampshire (collectively "UNH"), and against a former

supervisor, defendant Roger Beaudoin.  The plaintiff asserts

violations of Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e et seq., the Fair Labor Standards Act ("FSLA"), 29

U.S.C. § 201 et seq., and the New Hampshire equal pay act, N.H.

Rev. Stat. Ann. ("RSA") § 275:36 et seq.[1]  Before the court is

the defendants' motion to dismiss (document no. 5).

_____

     [1]The plaintiff has conceded that the state tort claims
asserted in counts four, five, and six are time-barred by statute
and, thus, are no longer pending before the court.  See
Plaintiff's Objection to Motion to Dismiss at ¶ 4.

Background[2]

The plaintiff has been employed in various professional, administrative, and technical ("PAT") capacities at UNH since August 6, 1979. During her years at the university she has been subjected to a variety of adverse employment actions because of her gender, including intentional acts of sex discrimination. The most recent discriminatory act is alleged to have occurred on April 9, 1993, when UNH "informed Bergstrom that no action would be taken to remedy the discriminatory treatment by Beaudoin and [Steve] Larson," another UNH supervisor. Complaint at ¶ 37.

For several years the plaintiff attempted to resolve these employment concerns through direct negotiation with the university. She first notified senior management, including the office of the university president, of the discriminatory conduct in 1988. Since that time, UNH administrators made verbal and written assurances to the plaintiff that the situation would be reviewed and remedied if the plaintiff were to forego legal action. Although the plaintiff was transferred to another department with the understanding that she would assume the title and responsibilities of an associate director, such a promotion "never materialized" and "from 1988 through 1993, administrators

_____

[2]The court's recitation of the facts relevant to the instant motion are either not in dispute or have been alleged by the plaintiff.

2

and officials at the University failed to meet their repeated promises that they would remedy the discrimination plaintiff suffered."  Plaintiff's Memorandum in Opposition to Motion to Dismiss at 3.  On January 31, 1994, 297 days after the last incident of discrimination, the plaintiff filed a formal charge of discrimination with the New Hampshire Human Rights Commission ("NHHRC").  The plaintiff submitted her charge on a federal Equal Employment Opportunity Commission ("EEOC") Form 5, which was addressed to both the NHHRC and the EEOC.  The NHHRC forwarded the charge to the EEOC, which received it on February 8, 1995, 305 days after the last incident of discrimination.  This lawsuit followed.

The court incorporates other facts, <u>infra</u>, as necessary for its analysis of the legal issues presented by the instant motion.

<u>Discussion</u>

I.   <u>Title VII Claims</u>

The defendant has filed the instant motion to dismiss under Rules 12(b)(1) and 12(b)(6) on the ground that the plaintiff's Title VII claims are barred because the plaintiff did not file charges with the EEOC within 300 days of the last incident of discrimination.  Motion to Dismiss at ¶¶ 1, 2 (citing 42 U.S.C. § 2000e-5).  The plaintiff responds that she satisfied the 300-day filing requirement because her January 31, 1994, filing with the

3

NHHRC, and not the EEOC's actual receipt of the charge eight days later, is the operative filing date for purposes of the applicable statute.

As an initial matter, the requirement that a Title VII plaintiff timely file a charge with the EEOC prior to litigating in federal court is not jurisdictional but, rather, more analogous to a statute of limitations. See, e.g., Rys v. U.S. Postal Service, 886 F.2d 443, 445 (1st Cir. 1989) (citing Zipes v. Trans World Airlines, 102 S. Ct. 1127, 1132 (1982)). Accordingly, the instant motion is properly treated as one alleging the failure to state a claim upon which relief can be granted under Rule 12(b)(6) and not as a motion attacking the court's jurisdictional capacity under Rule 12(b)(1).

A motion to dismiss under Rule 12(b)(6) is one of limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Accordingly, the court must take the factual averments contained in the complaint as true, "indulging every reasonable inference helpful to the plaintiff's cause." Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, 958 F.2d 15, 17 (1st Cir. 1992); see also Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989). In the end, the court may grant a motion to

4

dismiss under Rule 12(b)(6) "`only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.'" Garita, 958 F.2d at 17 (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)).

The motion to dismiss with respect to counts one and two turns on the distinctly legal question of whether the plaintiff's filing of her EEOC and NHHRC charge with the NHHRC on January 31, 1994, was timely under Title VII.  This inquiry requires a survey of the relevant federal statutes and the intricate relationship between the EEOC's administrative procedures and those of its state analogue, the NHHRC.

Title VII claims are subject to the filing requirements of 42 U.S.C. § 2000e-5(e)(1):

> A charge under this section shall be filed [with the EEOC] within one hundred and eighty days after the alleged unlawful employment practice occurred . . . except [where] . . . the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice . . . such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice.

See Kassaye v. Bryant College, 999 F.2d 603, 605 (1st Cir. 1993). Because the plaintiff initially presented her discrimination claim to the NHHRC, a state fair employment practices agency ("SFEP") within the meaning of Title VII, e.g. Singleterry v. Nashua Cartridge Prods., Inc., No. 94-345-SD, 1995 WL 54440 * 2

5

(D.N.H. Feb. 9, 1994), she need only satisfy the longer, three-hundred-day EEOC filing period, e.g. Kassaye, 99 F.2d at 605, n. 3; Worthington v. Union Pac. R.R., 948 F.2d 477, 479, n. 3 (8th Cir. 1991). The SFEP has the exclusive right to process any discrimination claim filed under both state and federal law until "the expiration of sixty days after proceedings have been commenced under the State or local law." 42 U.S.C. § 2000e-5(c). Thus,

> the charge is not deemed filed [with the EEOC] until the expiration of 60 days or until the state agency terminates its proceedings or waives its exclusive rights to process the charge, whichever is earliest. Regardless of which of these events triggers "filing" with the EEOC, the filing still must occur within the 300-day period.

Worthington, 948 F.2d at 479 (citing 29 C.F.R. §§ 1601.13(a)(4)(ii)(B), 1601.13(b)(1)).

In September 1993, the EEOC and the NHHRC executed a worksharing agreement to, inter alia, "reduce the duplication of effort by dividing primary responsibility between the agencies for the resolution of charges." Worksharing Agreement at ¶ II(A). Such agreements are explicitly authorized by federal law, 42 U.S.C. § 2000e-8(b), and are frequently used to process Title VII claims filed under the concurrent jurisdiction shared by the EEOC and the SFEPs, see, e.g., Griffin v. City of Dallas, 26 F.3d 610, 612 (5th Cir. 1994) (Texas); Worthington, 948 F.2d at 479-80

6

(Nebraska); <u>Green v. Los Angeles County Superintendent of
Schools</u>, 883 F.2d 1472, 1476 (9th Cir. 1989) (California); <u>Isaac
v. Harvard Univ.</u>, 769 F.2d 817, 824 (1st Cir. 1985)
(Massachusetts); <u>Humphrey v. Council of Jewish Federations</u>, 901
F. Supp. 703, 707-08 (S.D.N.Y. 1995) (New York).

Under the New Hampshire worksharing agreement the EEOC and
the NHHRC each authorize the other to serve as "its agent for the
purpose of receiving charges. . . . [f]or the purpose of
determining timeliness of filing, the effective date of filing a
charge will be the date that the initial receiving agency first
accepts the charge."  Worksharing Agreement at ¶ IX(A).[3]

The agreement further provides that

> The [NHHRC] waives its exclusive processing rights
> granted to it under sections 706(c) and 706(d) of Title
> VII in order to facilitate the EEOC to initially
> process the following categories of charges:
>
>> 10. The [NHHRC] will grant advance waivers of
>> their 60 day exclusive jurisdiction over all Title
>> VII charges, including dual filed charges received
>> between 180 and 300 days after the date of alleged
>> discrimination.  All such charges shall be
>> referred by the Agency to EEOC for initial
>> processing within 72 hours of receipt by the
>> Agency.

<u>Id.</u> at ¶ II(E).

---

[3]The plaintiff has submitted a copy of the worksharing
agreement executed in September 1993.  The defendants have not
disputed that the agreement was the version in force at all times
relevant to the instant motion, although they have contested the
legal significance of the agreement.

The plaintiff argues that the written "worksharing agreement" between the NHHRC and the EEOC automatically waives the sixty day exclusive review period and "provides <u>automatic</u> termination of the state proceedings under 42 U.S.C. 2000e-5(g) and gives the EEOC immediate jurisdiction at [the] date of filing" with the NHHRC. Plaintiff's Memorandum in Opposition to Motion to Dismiss at 6-7 (citing decisions of the Sixth, Seventh, Eighth, and Ninth Circuits). The defendants respond that absent "a clear directive from the First Circuit Court of Appeals concerning the effect of work sharing agreements," the plaintiff's claim must be barred because she did not file with the <u>EEOC</u> within the 300 days. Defendants' Reply to Objection to Motion to Dismiss at ¶ 5.

There is no dispute that the plaintiff, having filed with the NHHRC 297 days after the last incident of discrimination, satisfied the 300-day filing period period of 42 U.S.C. § 2000e-5(e)(1). It is also clear that the plaintiff's claim was submitted on an EEOC form addressed to both the EEOC and the NHHRC and that, under the unambiguous terms of the worksharing agreement, the NHHRC is an agent of the EEOC for filing purposes. The only question remaining question is whether the plaintiff is correct that the mere filing of the claim with the NHHRC on day 297 automatically triggered the "advance waiver of [its] 60 day

8

exclusive jurisdiction" period as provided in paragraph II(E)(10) of the worksharing agreement.

The First Circuit has not directly addressed the issue. However, courts sitting in virtually every other circuit have ruled that variations of the New Hampshire advance waiver provision are self-executing and may be considered "effective without further action by the state agency." Worthington, 948 F.2d at 481 (Eighth Circuit) (citing Sofferin v. American Airlines, Inc., 923 F.2d 552, 556 (7th Cir. 1991); EEOC v. Techalloy Md., Inc., 894 F.2d 676, 678 (4th Cir. 1990); Griffin v. Air Prods. & Chems., Inc., 883 F.2d 940, 943 (11th Cir. 1989)); see Griffin v. City of Dallas, 26 F.3d 610, 613-14 (5th Cir. 1994); see Green, 883 F.2d at 1478-80 (Ninth Circuit); Humphrey, 901 F. Supp. at 708, n. 3 ("While it does not appear that the Second Circuit has yet decided the issue explicitly, worksharing provisions such as this are consistently found to be self-executing."). For example, in Worthington, the plaintiff, like Bergstrom, filed her complaint with the SFEP, on an EEOC form addressed to both the SFEP and the EEOC, immediately before the close of the 300-day filing period. 948 F.2d at 478. The Eighth Circuit ruled that

> based on the express language of the worksharing
> agreement . . . and decisions of other courts
> interpreting similar agreements, the [SFEP]'s waiver
> was self executing and required no further action by

> the [SFEP] to be effective. The automatic waiver had the effect of immediately terminating state proceedings on the same day that [the plaintiff] filed her charge with the [SFEP]. Under 42 U.S.C. § 2000e-5(c) and 29 C.F.R. § 1601.13(b)(1), the termination cuts off the state's 60-day exclusive processing period and triggers immediate filing with the EEOC.

Id. at 482. The Worthington court ruled that for filing period purposes the plaintiff's charge was considered filed with the EEOC at the time it was received by the SFEP. Id.

The court is persuaded by the sound reasoning of the Eighth Circuit, the substantially similar reasoning of the other circuits that have addressed this issue, and the absence of any contrary decisions of the First Circuit. Accordingly, the court finds that the plaintiff's claim was timely filed with the EEOC in accordance with 42 U.S.C. § 2000e-5(e)(1).


II. Fair Labor Standards Act Claim

The defendants also seek dismissal of the plaintiff's count three claim under the Equal Pay Act, 29 U.S.C. § 206(d), and its state law counterpart, RSA 275:36-41. The defendants first argue that defendant Beaudoin, the plaintiff's former supervisor, is not an "employer" and, thus, cannot be held liable under the act. The defendants further argue that the plaintiff's claim against UNH is time-barred because her allegations of pay discrimination involve positions she held at the university from 1980 to 1988.

10

The plaintiff responds that she has alleged a continuing violation of the act because her current salary is "still based on the original discriminatory classification." Plaintiff's Supplemental Objection to Motion to Dismiss at 6. The plaintiff has not responded to the contention that supervisors are not considered employees under the act beyond her bald assertion that Beaudoin is properly named as an Equal Pay Act defendant simply because he is named as such in the complaint.

A. Beaudoin's Status

The Equal Pay Act defines the term "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The term is construed broadly to serve the act's remedial aims. E.g., Donovan v. Agnew, 712 F.2d 1509, 1510 (1st Cir. 1983); McMaster v. State of Minnesota, 819 F. Supp. 1429, 1435 (D. Minn. 1993) (citing Nationwide Mut. Ins. Co. v. Darden, 112 S. Ct. 1344, 1350 (1992)), aff'd, 30 F.3d 976 (8th Cir. 1994), cert. denied, 115 S. Ct. 1116 (1995). Where the status of a defendant as an employer is in dispute, courts examine the "economic reality" of the purported employer's status within the workplace. Donovan, 712 F.2d at 1510.

11

The question of whether Beaudoin may be individually liable as the plaintiff's employer requires a fact-intensive inquiry ill-suited to resolution under Rule 12. Rather, the issue is properly resolved by summary judgment following the submission of affidavits, depositions, and other evidence allowed under Rule 56(c), or at trial.

B. Continuing Violation

Any claim under the federal Equal Pay Act must be commenced within two years after the cause of action accrued except where the violation was willful, in which case the action must be filed within three years. 29 U.S.C. § 255(a). In the First Circuit, "a decision to hire an individual at a discriminatory low salary can, upon payment of each subsequent paycheck, continue to violate the employee's rights." EEOC v. McCarthy, 768 F.2d 1, 3 (1st Cir. 1985) (quoting Lamphere v. Brown Univ., 685 F.2d 743, 747 (1st Cir. 1982)); see Fortunato v. Keene State College, No. 94-41-SD, 1994 WL 269340 at * 2 (D.N.H. June 14, 1994).

The New Hampshire equal pay act requires that actions be filed within one year of accrual. RSA 275:41. The New Hampshire Supreme Court has not yet interpreted the language of the state statute or the application of the filing deadline. Gardner v. Blue Mountain Forrest Assoc., 902 F. Supp. 14, 16 (D.N.H. 1995).

12

However, this court has recently ruled that "[l]ike its federal counterpart, the New Hampshire Equal Pay Act is violated each time an employer presents disparate paychecks to employees." Id. (citing Gandy v. Sullivan County, 24 F.3d 861, 864 (6th Cir. 1994); Nealon v. Stone, 958 F.2d 584, 591 (4th Cir. 1992)).

The defendants correctly note that the plaintiff has not specifically alleged a continuing violation of the Equal Pay Act in her complaint. Rather, she alleges that she was "denied pay and benefits equal to those of similarly situated males who performed equal work requiring equal skill, effort and responsibility under similar working conditions." Complaint at ¶ 63. In addition, in her response to the instant motion the plaintiff argues that she "continues to receive discriminatory wages based on her grade classifications as Assistant Director from 1980 to 1988." Plaintiff's Memorandum in Opposition to Motion to Dismiss at 9.

The court finds that the factual allegations contained in the complaint, given "the liberal allowances of notice pleading and the deferential reading mandated by Rule 12(b)(6)," Machos v. City of Manchester, No. 94-627-M, slip op. at 2-3 (D.N.H. Sept. 20, 1995), adequately sketch out an equal pay act claim under both federal and state law based on a continuing violation theory. Thus, for purposes of the instant motion the court finds

13

that the equal pay claim is timely under both 29 U.S.C. § 255(a) and under RSA § 275:41 because the complaint contains facts indicating that, on the date of filing, the plaintiff was receiving a salary computed in part on a prior discriminatory low salary.

## Conclusion

The court denies the defendant's motion to dismiss (document no. 5) with respect to counts one, two, and three.

The clerk shall dismiss the remaining counts, alleging various state law tort claim, by agreement of the parties.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

January 9, 1996

cc:  Edward M. Kaplan, Esquire
     Martha V. Gordon, Esquire

14